The first case on the calendar is Trebejo-Robles. You can correct me if I've got the wrong pronunciation. That's correct, Your Honor. And you may proceed. Thank you, Your Honor. Mark Vanderhout appearing, Your Honor, on behalf of Mr. Trebejo, who's here in court today, and along with Beth Feinberg from our office. And I'll try to reserve about two minutes for rebuttal. The evidence in this case is overwhelming that the Petitioner established that he was threatened with death by the Shining Path for his refusal to collaborate with them, and that the Shining Path carried out its threats on numerous occasions. The immigration judge did not dispute that Petitioner had a well-founded fear of persecution, but denied asylum on the theory that Petitioner did not establish that the death threats were due to his political opinion. The immigration judge and the BIA subsequently misapplied the law, looking only at actual expressed political opinion rather than the clear showing of imputed political opinion. So what case would not necessarily be on all fours, but where's the case that would say, under these circumstances, the BIA and the IG were compelled to find attribution here? Well, there's two. Probably one that's pretty much all on all fours actually is Cardenas v. INS, and that's cited in our opening brief at 47 and our reply at 24, where the immigration judge and the BIA and this court found that the Shining Path imputed a political opinion to a port worker in Lima, almost the same facts, who refused to transport explosives into the port, and as a result, began receiving death threats from the Shining Path. The issue on appeal in that case was only whether he could internally relocate somewhere else, but the IG and the BIA did find in that case that there was the requisite imputed political opinion and the nexus there. This case is also very similar to Cordon Garcia v. INS, cited in our opening brief at 31, footnote 7, and page 53, and in a reply sort of throughout pages 15 to 21 to the court too, where a woman who taught literacy classes for the government in Guatemala had a political opinion imputed to her by the guerrillas because she refused to stop teaching and join them. In neither case did the person express an anti-guerrilla political opinion. However, under the law of this circuit, what matters is not the person's actual political opinion, but what the persecutors perceived that political opinion to be. By not considering this and only examining whether a petitioner had actually stated a political opinion, both the IG and the BIA, we submit committed reversible error. And the facts in this case are really overwhelming. I think the facts are extremely important, and they're undisputed, and that's also important. Well, I understand that. I understand that, and I take your point that there's no argument being made, apparently, that he wasn't subjected to some form of persecution in the past. The question is really the political attribution, and what is troubling me, and that's why I ask the question, is to what extent does our circuit authority not require either an expressed opposition, which was the case of the president of the association in the building? I mean, he expressly said that he was, or at least it was attributed to him because the building that was going up was clearly opposed. He took a leadership role. It was very public. The other case in which the extortion case, where he stopped, the businessman stopped paying extortion, saying, I'm not going to pay money to you. So those are cases where there's been overt expression. We don't have that here. We don't, but like I said, both in Cordon Garcia and in Cardenas, there was no express statement by the petitioners in those cases. The court recognized that, and there was imputed political opinion because of what the persecutors did, not because of what the individual said at all. So those would be the two that are most apposite here. Absolutely. Cardenas is very similar factually. And also I'd refer the court to the Gafoor case, if I'm pronouncing it correctly. Judge Thomas was on that panel. In that case, the court looked at it both from an imputed political opinion and from a mixed motives standpoint, and looked at the facts again. The individual who was persecuted there, the police officer who had been going after a higher-up officer, never expressed a political opinion at all, but they imputed a political opinion. He was anti-the Army, et cetera, and even though he had never said anything. So I think the law in this circuit is quite clear that that's the whole theory of the imputed political opinion. If you express your actual opinion, then that's not imputed. That's actual. And if you don't, then it's not. Well, I understand the distinction, but in this case, what you have is someone who refuses to transport a package, and that's the full extent of his activity. Correct. Then there's the retribution against his family members where they purport to be looking for him. And correct. And the threats that say we're going to kill him for not collaborating with our cause. That's the actual quote that's in the record in the police report that was submitted. And rarely do you have. Well, but then if that's the case, then you're saying that the law of the circuit should be that any time a revolutionary or terrorist group threatens somebody because they don't cooperate, then the rule of the circuit is that that's an imputed political opinion if the people don't go along with it. Well, there's two things that are required, and this is why this is distinguishable from Elias Zacharias. Elias Zacharias, he tried to recruit the person, and the person fled. Nothing more happened. And the Supreme Court said that's not enough. But here you have something very different. You have them trying to get him to take the explosives into the port. He says, no, I'm not going to. Then they go to his house, his sister's house. They make calls and they say, we are going to kill this guy because he won't collaborate with our cause. Which brings me back to my question. So then under those facts. Correct. And if they're replicated anywhere throughout the world, we would say that that for this circuit constitutes imputed political opinion. That's enough for them because they're saying you're either against us or you're neutral, and neutrality has been held by the circuit to be a political expression of political opinion. And when he's saying, no, I'm not doing that, and he's taking those threats and they're going after him and they're saying they're going to kill him because of that, yes, that's enough. But doesn't the record say that they were going to kill him for his failure to cooperate with them as opposed to disagreement with them? To support their terrorist cause is what it says. That's what the police report said that they had said for their cause. And that was something that was really important because there you get the political context in there. And once they're saying that you're not going to support our cause and we're going to kill you for that, there's an imputed political opinion. And I think the law of this circuit is clear on that. In certain cases, it's far less clear than this where neutrality has been held to be an expression of political opinion. That's been sufficient. Let me, if I can, just because I only have two and a half minutes and I want to just briefly mention the affirmative opinion issue, what I would say on that just very briefly is Falcón Carriche does not control this case. Falcón Carriche dealt with a due process issue. We're raising administrative law, statutory law, interpretation here. Dunlap, I urge the Court to look at the Supreme Court's decision in Dunlap where it says that even if there's no judicial review at all, even no judicial review, that the agency has to show its reasoning to show that the agency has made a considered opinion. Lastly, I would say that as far as Elias Zacharias and deference to the agency, we submit that does not apply when there's an AWO. And there's two reasons for that. And that is that the same deference that is owed an agency that has vetted the issues up to its ultimate decision-maker is not owed to a low-level official. And two, the Court cannot defer to the agency's reasoning because by regulation the reasoning of the appellate body of the agency is unknown, only its conclusion. So we submit under that that Elias Zacharias would not control this case in any case in terms of deferring to the expertise of the agency in coming to its conclusion. And I'll save my last minute for rebuttal. Very good. Thank you, Counsel. We'll hear from the Government. Good morning, Your Honors. May it please the Court, William Irb from Department of Justice representing the Respondents in this matter. Your Honor, this is your classic on-account of political asylum case. Contrary to Petitioner's claim, substantial evidence supports the immigration judge's decision in this case that Petitioner was not persecuted on account of his political belief, but rather based on a personal vendetta. Well, the vendetta was for what purpose? Because he refused to smuggle in the alleged dynamite, which we don't actually know what it is. Well, on behalf of? On behalf of people he did not know at the time when he was confronted. But we're accepting as true, are we not, that it was Shining Path? That's correct. So I would like to pose to you the same question I posed to Counsel for Petitioner, is if in a situation where it is clear that there's no dispute that the organization itself is a political, terrorist, anti-government, revolutionary party, and they go out and seek retribution against someone who fails to go along with their activity, why doesn't that give enough information to say that it is an imputed political motive, as opposed to simply vendetta? These aren't criminals in the ordinary sense. This isn't the – I mean, we have the DeLosso case where there was some question as to whether there was a vendetta or there was a political motivation. Why – how does one draw the line in this case? Well, Your Honor, we have to look at the facts of the case and the actual evidence in the record. What we do know is that there's no identity established here with the people. And also, more importantly – No identity in what sense? Of the people who are bringing the – requesting that the Petitioner smuggle the package into – Didn't they leave on the – didn't the trashing of the sister's house, didn't they leave political – Right. But even if we were to assume that these were members of the Shining Path, which Petitioner alleges, Your Honor, he has not made the nexus between their actions and the fact that their actions were taken because they viewed him as being politically opposed to their position. Instead, all we have in the record is the indication that he refused to deliver the package. And they took action in retribution. Right. And left political – But there's no expression of a political opinion, which is – But they expressed their political identification by leaving the hammer –  But that does not necessarily – Wait. Excuse me. Sorry, Your Honor. Just let me get my question and then I'll stop interrupting you. The problem in this case, why it seems difficult and at the margin, is I agree that there's limited activity on Petitioner's part. He refused to take a suspected explosive package into the port facility. And then the consequence of that is that the Shining Path comes to his sister's and then his aunt's house, I guess, later. And at least one, if not both of them, leaves political insignia. Now, what does one make of that? If that's not – is that totally apolitical or – because when you say it's just a vendetta, a vendetta seems to me beg the question here. I don't think the record establishes that we have the Shining Path in the sister's house or in the mother's house later coming after Petitioner because of the political expression. There's no political expression made on behalf of the Shining Path in those – during those two instances. But what is smearing the walls with the hammer and sickle then? What is that? I can't – that was not there at the time, obviously, Your Honor. But there's no – that's just a symbol of the organization itself. It doesn't necessarily – you can't necessarily say that they believe that he was politically opposed to them. I mean, that is just a symbol of the organization, not necessarily a political statement on themselves, by themselves stating that they were against him because of his political opposition. But I don't have – I think your position actually would negate the whole theory of imputed political opinion because in those cases, in all those cases, there has been – the Petitioner doesn't express a point of view. That's the whole theory of imputed political opinion. There must be some actions, Your Honor, in which it's the political opinion of the Petitioner and the motivation of the persecutors, as they said in – the Supreme Court said in Zacharias, or the two primary points that must be looked at. We have to look – the Petitioner has to establish the reasoning behind the persecutors' actions. He has not done that. But how do you distinguish this from the Borja line of cases? I mean, Borja, we have Elias Zacharias, of course, which forced recruitment alone isn't sufficient. But then we have Borja and we have all these other cases in which the new people's army in the Philippines and the Shining Path and Peru, of course, operate in the same way. They try to recruit people and they use terrorist methods to enforce their recruitment. And we said in Borja that if you point a gun at somebody and try to recruit them and extract taxes and then make death threats, that's enough. Yes, but the key element that's been missed that's not in Borja in this case is that she expressed a political opinion. She stated she had paid them ransom and then later said, I refuse to pay you anymore. Right. There was a confrontation between the two parties at that point, Your Honor. And the same with the other case relied on in Cardeas. She didn't express – and the argument was – in Borja was precisely the same argument you're making here today, is that she didn't express her opinion. No, no, she – No, that was the government's argument. She said, no, she didn't – she stopped paying them. And she didn't say, I am for this other side. She said, I'm not with you. My reading of Borja's status is she told them that she was opposed to them for the specific reason that she did not believe in the Communist Party in the Philippines. And that's not what we have in this case. This case is completely different from that case, Your Honor. And the same with – in the Cardeas case, the Petitioner's relying on. In that case, the – the Petitioner agreed to smuggle and bring items out of the port for the Shining Path. Right. And also that case establishes that the family was persecuted because the brother, I believe it was, was a police officer. And the Petitioner in that case was viewed to be considered by the Shining Path as a snitch. We don't have that kind of factual pattern in this case as we do in the two cases that we've just discussed. Your argument to have greater force, if there hadn't been for the political expression left, if it's just simply a case of you're not cooperating and therefore we're going to kill you, that's one thing. But then to say, well, you're against our cause and therefore we're going to take retribution, transforms it, I think, don't you? Well, Zachariah states that when we look at the motive of the prosecutor – of the persecutor, the Petitioner has to – he can establish by circumstantial evidence. However, that circumstantial evidence, which I would say is all we have in this case, it still must compel – it must be by compelling circumstantial evidence. And this Court has found that. And that was after – obviously after the Zachariah decision in the Supreme Court. I would submit, Your Honor, that merely we have circumstantial evidence at the most, and the evidence does not compel an alternative finding, that he was persecuted on the basis of his political belief rather than his mere refusal to deliver the package. Well, the difficulty is in almost all these cases that's all you have is circumstantial evidence because the persecutor doesn't say, Hi, I'm a persecutor and I'm going to discriminate against you on one of the enumerated grounds in the INA. That just doesn't happen. That's correct, Your Honor. I would also submit that this case doesn't even meet the mixed motive case law because, again, we do not have sufficient evidence or substantial evidence that he has a political opinion, that the persecutors were aware of that opinion and they were persecuting him because of that opinion. You have about a minute left. Do you want to address the argument about the – I guess it's an extension of the Falcon-Carice challenge to streamlining, saying that you're required under our case law and statute to provide a reasoned decision? No. I would say that Carice controls this case and the Petitioner does not. Well, that's a due process case. I think the argument here is somewhat different. It's an extension of the reasoning from our suspension of deportation cases in which we did require a reasoned decision. Whether or not that's – one can extend that or not is another question, but I think it's a different argument than Falcon-Carice. What's your response? The point is basically, Your Honor, that regardless, the boards – this Court can review the immigration judge's decision as it just recently did on Friday in the DeLone case in which it rejected the immigration judge's decision because it was basically incomprehensible, I think was what this Court said. And what it did was it was – that is the process and how I think the process should work, Your Honor. But if they look – if this Court looks at the immigration judge's decision, that's what Carice teaches us and says, and then if this Court does not like, it does not find that it's based on substantial evidence, it can clearly reverse what this Court did applying a streamlined case just last Friday. I really don't see much of a distinction in Petitioner's argument in his attempts to distinguish Carice in this case. Do you have any questions? Okay. Further questions? Thank you, counsel.  A couple brief points, Your Honor. In – I urge the courts to look at the two cases we mentioned, Cardenas and Cordon-Garcia. In neither of those, was there any expression of political opinion in the Cordon-Garcia  In the Cordon-Garcia case, what the woman said is, I'm not going to – is that she already had a position at the school. That was the only thing she said. And in Cardenas, there's nothing about being a snitch that I can find in that. He just stopped cooperating. But where do they discuss in Cardenas the political ground? Well, it was – It's really a question. The IJ and the Board found an imputed political opinion, so the only – based on those facts. And the only thing that was before the Court was the changed conditions. Right. And we also would say, Your Honor, is that here the immigration judge and the Board didn't even consider – not that they rejected – didn't even consider the imputed political opinion or mixed motive theories. We believe the Court should find that there was a well-founded fear established. But if the Court doesn't believe that and we urge the Court that it should, at a minimum it should be remanded and tell the Board to do the proper inquiry because it didn't do it at all. And that was asserted, was it not, before the – Pardon? That was asserted – mixed motive was asserted before the immigration judge? Oh, yes. Yeah, just judge never addressed it in order to address the evidence of all the conditions surrounding there. Lastly, I would point out, and the government counsel mentioned that in one of the cases, the family was very active. Here the record is replete with this family being very active politically, two of them themselves, two of the siblings were granted political asylum here, and they were a very active family there. And that's all in the context of the threats against the family we would submit. So thank you very much. The case will be submitted.
judges: Thomas, Fisher. Robart